# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00003-CR

**Randy Eugene Stripland, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 391ST JUDICIAL DISTRICT
NO. D-09-0407-SA, HONORABLE THOMAS J. GOSSETT, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted Randy Eugene Stripland of murder and the trial court assessed punishment at 75 years in prison. Stripland complains that the trial court erred by overruling his objection to the State's assertion when cross-examining him that, because he heard the testimony of all the witnesses, he could conform his testimony to theirs. In a supplemental brief, he contends that the evidence was legally insufficient to support the verdict and that the trial court committed egregious error by failing to properly apply the law of parties to the facts of this case in the jury charge. Finding no reversible error, we will affirm the judgment.

## BACKGROUND

The roots of this offense are in a breach of drug user protocol. Bree Andrews and Stephen Crabtree bought some methamphetamine and took it to Kevin Harris's house. Harris used some of the drugs and offered to give them only $10 as a gratuity, which was far less than they felt

was customary. They both told Harris that he had shorted them. As Andrews started to leave, Harris pulled and cocked a gun behind her head. Andrews continued walking away without incident.

Stripland learned about the incident and, as a friend of Andrews's parents, decided he needed to discuss the issue with Harris—in part, Stripland testified, to be sure the incident occurred as Andrews had described. Crabtree testified that he told Stripland to be careful because Harris carried a gun. Crabtree testified that Stripland said he did not care that Harris carried a gun, but Stripland denied making that statement.

Stripland drove a truck to Harris's house wearing gloves and a head rag or skull cap as was his habit from working in construction. Woody Jackson was in the front passenger seat, and Jason Paul, Jon Ducote, and Kevin Fryar were in the backseat. Fryar testified that he noticed that Jackson had a shotgun in the truck, but Ducote did not notice it until they were walking toward the house. Stripland testified that he did not see the shotgun until after the shooting began. Fryar testified that he had a 9 mm Glock in his waistband. No one else testified that they were carrying or saw anyone else carrying a weapon.

Harris's girlfriend testified that she opened the door. All of the men except Ducote were visible to her and Harris, including Jackson with the shotgun. There was testimony that Harris started to raise his gun and that Paul kicked him, and witnesses disagreed whether Harris pulled the gun from his back or front waistband. Harris fired a shot and at least one pistol shot was fired by someone else, hitting Harris. Witnesses differed as to who fired first. Harris's girlfriend testified that an older, skinnier white guy with a do-rag bearing the Confederate flag on it raised his hands and a shot went off. She identified Stripland as the man she said fired the first shot. She stated at trial, however, that she did not see a gun in his hand, only that he raised his hands and the shot was fired.

2

She identified Jackson as the man holding the shotgun. She testified that she did not see any more of the altercation because, after the first shot, she ran to protect children in the house.

Stripland's group retreated when the shooting began. No one testified that they saw Stripland hold or fire a gun at Harris's house. Witnesses agreed that Jackson fired his shotgun, hitting Harris. A neighbor testified that a man wearing clothes similar to those Stripland wore carried something out of the house in his right hand, but could not tell what it was. That witness, however, described the man as "not as white" as a photo of Stripland. Paul testified that, when he got into the bed of the truck with Ducote and Fryar, he saw that Fryar was holding a wooden-handled pistol that appeared to be a .22 caliber.

Ducote and Fryar testified that, at Stripland's house later, Stripland told them to develop alibis and not to talk on the telephone about the shooting. According to Fryar, Stripland let the others walk away, pulled a gun out of the front waistband of his (Stripland's) pants, and asked Fryar to hide it in Stripland's attic. Fryar said he complied. Stripland rejected these parts of Ducote's and Fryar's testimony. Stripland directed police to the gun Fryar hid in his attic and the shotgun parts Jackson buried in a field. Stripland tested positive for gunshot residue on his hands and inside his waistband, as did a skull cap with the rebel flag on it recovered from his truck. Stripland said Jackson essentially fired over the top of him, and Stripland also said he shook hands and hugged participants, indicating that he might have obtained gunshot residue in those ways. The gunshot residue analyst testified that residue can be transferred by contact with people or things, and that the elements of gunshot residue are also present in the environment—particularly on plumbers and welders—absent gunshots. Witness Jared Lohse testified that Fryar admitted shooting Harris,

3

and Paul testified that Fryar showed him a .22 shell casing and said, "This is what saved your life." Fryar denied making such statements.

The medical examiner testified that the .22 bullet that hit Harris in the chest was "potentially a fatal injury. Obviously you could survive a gunshot wound of the chest of the type that Mr. Harris sustained simply because it did not cause any damage to the heart or major blood vessels." It lacerated a lung and would have required surgical intervention. The shotgun pellets, however, were "much more devastating" but not instantaneously fatal. The pellets lacerated blood vessels and his aorta and he died of blood loss.

Evidence showed that the .22 bullet recovered from Harris's body was a hollow-point, while the bullets still in the .22 pistol recovered from Stripland's house were not hollow point. Ballistics tests comparing the bullet from Harris's body and the pistol from Stripland's house were inconclusive. No DNA from Stripland was found on the pistol.

## DISCUSSION

Stripland contends that the State's question about the effect of his being in the courtroom during the testimony was improper because it was harassment without balancing merit, insinuated that he was going to lie, and impugned his counsel's ethics. He contends that the evidence was insufficient to convict him of murder, and that the charge on the law of parties was deficient.

**Comment on his presence in the courtroom**

During Stripland's testimony, he commented on other witnesses' statements. The following exchange during cross-examination by the prosecutor forms the basis of his appellate complaint:

4

Q. You know, you have had the benefit of being in here through the entire trial and hearing every witness'[s] testimony so that you can help yours fit with whose ever you choose—

[DEFENSE COUNSEL]: Judge, I object to the characterization of that, of whoever he chooses. If she wants to cross-examine, cross-examine. That is badgering.

THE COURT: Overruled.

Q. (By Mrs. Palmer) You have had the benefit of hearing everyone else testify so that you can fit your testimony to whomever you choose; isn't that correct?

A. Yes, ma'am.

On appeal, Stripland reasserts his complaint that the State's question was badgering, or harassment, intended to persuade the jury that he was lying and would continue to lie. He extrapolates that this also signaled to the jury that his counsel was part of the deception. He contends that the comment implicated his right to be present during trial, his right to testify, and his right to counsel. *See* U.S. Const. amends. V, VI, XIV; Tex. Const. art. I, §§ 10, 19.

The scope of cross-examination is subject to the sound discretion of the trial court. *Reyes v. State*, 741 S.W.2d 414, 421 (Tex. Crim. App. 1987). When a defendant in a criminal case voluntarily takes the witness stand in a trial on the merits on his behalf he occupies the same position and is subject to the same rules as any other witness. He may be contradicted, impeached, discredited, attacked, sustained, bolstered, made to give evidence against himself, cross-examined as to new matter, and treated in every respect as any other witness, except where there are overriding constitutional or statutory provisions. *Id.* Trial courts may place reasonable limits on cross-examination based on such concerns as harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant. *Matchett v. State*,

941 S.W.2d 922, 940 (Tex. Crim. App. 1996). We will affirm the trial court's ruling on an objection to cross-examination questions if the ruling is reasonably supported by the record and is correct under any applicable legal theory. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

The United States Supreme Court has essentially approved the approach Stripland challenges. In *Portuondo v. Agard*, the defendant objected at trial to the prosecutor's closing argument that, because the defendant heard all the testimony, he could tailor his testimony to what he heard. 529 U.S. 61, 64 (2000). The defendant contended that the prosecution's argument infringed on his federal constitutional rights to attend trial and to testify. *Id.* at 65. The Supreme Court held that "[a]llowing comment upon the fact that a defendant's presence in the courtroom provides him a unique opportunity to tailor his testimony is appropriate—and indeed, given the inability to sequester the defendant, sometimes essential—to the central function of the trial, which is to discover the truth." *Id.* at 73. The dissent in *Portuondo*, while rejecting the majority's acceptance of the prosecutor's comment during summation, strongly indicated that it would not have similar concerns for the defendant's constitutional rights had the issue been raised during cross-examination, writing as follows:

> [T]he distinction between cross-examination and summation is critical. Cross-examination is the criminal trial's primary means of contesting the credibility of any witness, and a defendant who is also a witness may of course be cross-examined. *Jenkins* supports the proposition that cross-examination is of sufficient value as an aid to finding truth at trial that prosecutors may sometimes question defendants even about matters that may touch on their constitutional rights, and *Brooks* suggests that cross-examination can expose a defendant who tailors his testimony.

6

*See id.* at 87 (Ginsburg, J., dissenting) (citing *Jenkins v. Anderson*, 447 U.S. 231, 233 (1980); *Brooks v. Tennessee*, 406 U.S 605, 609-612 (1972)). Under *Portuondo*, the prosecutor's assertion through a question that Stripland could tailor his testimony to other evidence presented at trial was permissible, and the trial court did not violate Stripland's asserted federal constitutional rights by overruling his objection to the prosecutor's question. We do not agree that the question impugned defense counsel's ethics or impinged on Stripland's right to counsel. We further conclude that the trial court did not violate analogous state constitutional rights.

We also do not find reversible error under case law. Stripland relies on a case in which the court of criminal appeals stated that the prosecutor should not have been allowed to read the perjury statute in open court when attempting to impeach a witness. *See Reyes*, 741 S.W.2d at 423. The court made its comment while holding that, even if the complaint had been preserved (which the court held it had not been), there was no error because defense counsel invited the reading of the statute. *See id.* This comment from *Reyes* is not binding precedent for our distinct facts—*i.e.*, the prosecutor in this case made a credibility challenge rather than an imputation of criminal testimonial wrongdoing. Further, the prosecutor's question in this case merely made explicit something that was apparent to the jury and was a factor within its fair consideration—Stripland had been in the courtroom throughout the trial and could have modified his testimony based on what he heard. Because the question occurred during cross-examination, Stripland had the opportunity to respond to the question directly and through redirect examination or some other means. We conclude that the trial court did not err by overruling the objection to the question.

**Sufficiency of the evidence**

Stripland contends that the evidence is legally insufficient to support a jury verdict finding him guilty of murder as a principal. In considering a legal-sufficiency challenge, we view the evidence in the light most favorable to the verdict and determine whether a rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). This standard "gives full play to the jury's responsibility to fairly resolve conflicts in the evidence, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. (citing *Jackson*, 443 U.S. at 319). It is not necessary that each fact point directly and independently to the defendant's guilt as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.* (citing *Hooper*, 214 S.W.3d at 13).

The trial court charged the jury that "if you believe from the evidence beyond a reasonable doubt that on or about March 2, 2009, in Tom Green County, Texas, the Defendant, RANDY EUGENE STRIPLAND, did then and there intentionally or knowingly cause the death of an individual, namely, Kevin Harris, by shooting the said Kevin Harris, with a firearm, then you will find the defendant guilty of Murder as charged in the indictment." Stripland's challenge to the failure to include the law of parties in the application section of the charge does not assert error in the charge of murder as the principal.

As illustrated in the background section above, there was much conflicting evidence as well as some inferences that the jury had to make or reject in this case. No one testified to seeing Stripland holding a pistol at Harris's house or actually firing a shot and hit Harris. But Harris's

girlfriend identified Stripland as the man whose hands went up and who fired the first pistol shot, and agreed with the description of him as the "guy that shot Kevin." Despite wearing gloves, Stripland had gunshot residue on his hands. Harris was hit with a .22 bullet, and Fryar testified that Stripland later pulled a .22 pistol out of his waistband for Fryar to hide. Stripland's waistband tested positive for gunshot residue. Although the shotgun blast was more devastating, the wound from the .22 bullet was potentially fatal, which is sufficient to ascribe causation of Harris's death to the shooter of the .22. *See* Tex. Penal Code Ann. § 6.04(a) (West 2011).[1] Some evidence weighs against Stripland's guilt, such as the absence of express eyewitness testimony that he fired a .22 pistol, his directing the police to the gun in his attic, evidence pointing to Fryar as the .22 shooter, and uncertainties relating to the source of the gunshot residue found on him and his belongings. These are ultimately weight and credibility issues that must be resolved by the jury, and those resolutions must be respected on appeal. *See Jackson*, 443 U.S. at 318-19; *Gear*, 340 S.W.3d at 746; *Hooper*, 214 S.W.3d at 13. Based on the record before us, we conclude that a rational factfinder could have found the essential elements of the offense beyond a reasonable doubt.

Because the evidence is legally sufficient to support the conviction of Stripland as a principal, we conclude that any error by the trial court to properly apply the law of parties to the murder charge does not constitute reversible error. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).

---

[1] "A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." *See* Tex. Penal Code Ann. § 6.04 (West 2011).

## CONCLUSION

Finding no reversible error presented, we affirm the judgment.

_____

Jeff Rose, Justice

Before Justices Puryear, Rose and Goodwin

Affirmed

Filed:   August 30, 2012

Do Not Publish